ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>DEMANDANTE-APELADO<br><br>V.<br><br>ALEXANDER DESPIAU BATISTA<br><br>DEMANDADO-APELANTE | KLAN202400656 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Sala: 801<br><br>Caso Núm. K CD2016-2117<br><br>Sobre: Ejecución de Hipoteca |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard, y la Jueza Díaz Rivera

Brignoni Mártir, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 21 de octubre de 2024.

Comparece ante nos, Alexander Despiau Batista (en adelante, "el apelante"). Su comparecencia es a los fines de solicitar nuestra intervención para que dejemos sin efecto la determinación emitida el 7 de marzo de 2024 y notificada el 8 de marzo de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante la referida determinación el referido tribunal declaró *Ha Lugar* la "*Solicitud para que se Dicte Sentencia Sumaria*," presentada por el Banco Popular de Puerto Rico (en lo sucesivo. "la parte apelada").

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

### I.

El 28 de octubre de 2016, la parte apelada presentó la "*Demanda*" de epígrafe. Relató, que el 16 de septiembre de 2013 el apelante suscribió un pagaré a su favor. Ello, por la suma principal de $136,900.00, más intereses pactados al 6.25% anual. Indicó, que la fecha de vencimiento del pagaré era el 1 de marzo de 2044. Expresó, que la referida obligación estaba asegurada por un gravamen hipotecario sobre un inmueble sito en

el Municipio de San Juan. Argumentó, que el apelante incumplió con los pagos mensuales estipulados desde el 1 de mayo de 2016.

Ante ello, adujo que la deuda estaba vencida. En consecuencia, solicitó que se declarara que el apelante le debía pagar una cantidad ascendente a $132,090.00 de principal, más intereses, recargos, seguros contra riesgo, contribuciones territoriales, costas, gastos y honorarios de abogado. También, entre otras cosas, peticionó al foro sentenciador que ordenara la venta en pública subasta de la propiedad en cuestión.

En respuesta, el 23 de noviembre de 2016, el apelante presentó una "*Contestación a Demanda*." En esencia, admitió que suscribió un pagaré a favor de la parte apelada y que la obligación prestataria estaba garantizada por una hipoteca. Además, aceptó que dejó de satisfacer los pagos mensuales que se había obligado a efectuar. Sin embargo, añadió que existía un segundo pagaré que también establecía una promesa de pago para la misma obligación que garantizaba el primer pagaré. Argumentó, que el préstamo otorgado entre las partes era uno de construcción. Según adujo, para dicho préstamo se debía anotar en el segundo pagaré los adelantos al principal adeudado. Ello, como evidencia de que la parte apelada cumplía con los desembolsos que debía efectuar. No obstante, sostuvo que la parte apelada no cumplió con evidenciar los referidos desembolsos. Indicó, que aun retenía cantidades de dinero que eran parte de los aludidos desembolsos que se había obligado a efectuar.

Alegó, que existía un pleito bajo el numero de caso KAC2015-0741 a través del cual se estaba dilucidando la controversia sobre los referidos desembolsos. Añadió, que la construcción objeto de contrato no se llevó conforme al permiso aprobado y no fue terminada. Comunicó, que dicha situación también era objeto de litigio. Por lo cual, argumentó que el presente pleito debía ser suspendido hasta que se dilucidaran las controversias pendientes ante el foro recurrido.

Tras varios trámites procesales que no son necesarios de pormenorizar, el 30 de enero de 2023, la parte apelada presentó una

"*Solicitud para que se Dicte Sentencia Sumaria.*"[1] En síntesis, arguyó que no existía controversia sobre los hechos esenciales del caso. Argumentó, que era un hecho incontrovertido que las partes se habían obligado a los términos del préstamo de construcción. Añadió, que no existía controversia sobre que la obligación estaba garantizada por una hipoteca inscrita en el Registro de la Propiedad. Agregó, que tampoco había controversia sobre que era tenedor de buena fe del pagaré en cuestión y que el apelante era el dueño registral del inmueble.

De igual modo, indicó como hechos incontrovertidos que el apelante incumplió con los pagos pactados y que la deuda era una vencida, liquida y exigible. En virtud de lo expuesto, solicitó sentencia sumaria a su favor. En consecuencia, peticionó el pago del principal, intereses, recargos, costas, gastos y honorarios de abogado, según se había estipulado en el contrato. A su vez, requirió la venta en pública subasta de la propiedad.

En reacción, el 28 de marzo de 2023, el apelante presentó un "*Escrito en Oposición a Solicitud de Sentencia Sumaria.*"[2] En esencia, adujo que existía controversia sobre si la parte apelada incumplió sus obligaciones contractuales. Particularizó, que era necesario evaluar si medio negligencia de la parte apelada en la aprobación y administración del préstamo de construcción. Ello, dado que, la edificación que se construyó sobre el inmueble (terreno hipotecado) era una ruina que había que demoler. Argumentó, que la naturaleza del contrato era una de obligaciones reciprocas. Por consiguiente, sostuvo que había que aplicar al caso la doctrina de "*Exceptio Non Adimpleti Contractus*" o excepción del

---

[1] Apoyó su "*Solicitud para que se dicte Sentencia Sumaria*" con la siguiente prueba documental: "*Contrato de Préstamo de Construcción y Relevo de Responsabilidad;*" Documento intitulado "*Anejo AA;*" Documento intitulado "*Anejo B;*" Documento intitulado "*Note Pagaré;*" "*Prepayment Premium Rider Addendum sobre Prima por Pago Anticipado;*" Escritura intitulada "*Primera Hipoteca*" del 16 de septiembre del 2013; "*Certificación de Propiedad Inmueble;*" Documento intitulado "*Payoff Statement;*" "*Declaración Jurada*" suscrita por Martha M. Dávila Carraquillo.

[2] Apoyó su "*Escrito en Oposición a Solicitud de Sentencia Sumaria*" con la siguiente prueba documental: "*Sentencia*" del 30 de octubre de 2020 en el caso KLAN2019-00753; "*Pagaré*" del 16 de septiembre de 2013; "*Estudio de Título"* del 14 de febrero de 2023; "*Sentencia*" del caso KPE2016-2705 del 26 de febrero de 2017; Cheque emitido por el Banco Popular de Puerto Rico.

contrato no cumplido. En virtud de la cual, podía solicitar resolver el contrato en cuestión o exigir el cumplimiento de la parte apelada.

Ante ello, alegó que el pleito no estaba maduro. Esto, dado que, había que esperar a que se resolviera la controversia sobre incumplimiento contractual de la parte apelada, la cual se estaba dilucidando en el referido caso KAC2015-0741. Indicó, que luego de ello se podía continuar con la resolución del presente caso. Así pues, peticionó que el caso de epígrafe no fuera resuelto por la vía sumaria. Además, solicitó la desestimación del pleito por no ser maduro. En la alternativa, requirió que el litigio se paralizara hasta que se dictara sentencia en el caso KAC2015-0741 o que dicho caso fuera consolidado con el caso que nos ocupa.

En atención a los escritos presentados, el 8 de marzo de 2024, el foro recurrido notificó una "*Sentencia*." Mediante esta, declaró *Ha Lugar* la "*Solicitud para que se Dicte Sentencia Sumaria*." En consecuencia, ordenó al apelante satisfacer la suma de $132,900.00 en concepto de principal adeudado; mas intereses al 6.25% anual; recargos y cargos acumulados; costas; gastos y honorarios de abogado. En la referida "*Sentencia*" dicho foro esbozó las siguientes determinaciones de hecho no controvertidos:

1   El 16 de septiembre de 2013, **el Banco Popular y** Despiau Batista suscribieron un Contrato de Préstamo de Construcción y Relevo de Responsabilidad. Para evidenciar y garantizar el préstamo, en la misma fecha, Despiau Batista suscribió un Pagaré a favor de Banco Popular o a su orden, por la suma principal de $136,900.00 con intereses pactados al 6.25% de interés anual y demás créditos accesorios, vencedero el 1 de marzo de 2044.

2   Igualmente, Despiau Batista se obligó a pagar la suma equivalente al 10.00% de la suma principal original, es decir $13,690.00, para cubrir costas, gastos y honorarios de abogado incurridos por el Banco Popular al hacer valer sus derechos bajo el pagaré en caso de tener que interponerse una reclamación judicial para el recobro de la deuda evidenciada en el pagaré.

3   Es condición del préstamo otorgado y así como establece el pagaré hipotecario, que éste sería satisfecho mediante pagos mensuales consecutivos de $842.92. Se pactó además en que, en caso de incumplimiento con la obligación de pago por parte de Despiau Batista, el tenedor del pagaré podrá ejercer la opción de acelerar el vencimiento de la deuda prestataria y el balance insoluto acumulará un cargo por mora de 5.00% del pago vencido de principal e intereses.

4      El 16 de septiembre de 2013, en aseguramiento de todos los términos y las condiciones del Pagaré antes mencionado, Batista Despiau otorgó la Escritura de Primera Hipoteca, la escritura núm. 68 ante la notario público Cecille M. Blondet Passalacqua sobre la propiedad siguiente descrita

> RÚSTICA: Solar identificado en el Plano de Inscripción del Proyecto Estancias de Cupey, con el número veintinueve (29) localizado en el Barrio Cupey Alto del término municipal de San Juan, Puerto Rico, con una cabida superficial de novecientos ochentiocho punto cuarentiocho metros cuadrados (988.48 m.c.), en lindes por el NORTE: con faja dedicada a Uso Público; por el SUR, con Calle "A"; por el ESTE, con el Solar Número treinta (30) del Plano de Inscripción; y por el OESTE, con el Solar Número veintiocho (28) y faja dedicada a Uso Público, según el piano de inscripción.

> La propiedad consta inscrita en el Registro de la Propiedad de San Juan, Sección IV al folio 221 del Tomo 831 de Río Piedras, Finca Número 23,228, inscripción primera.

5.     La hipoteca sobre el solar antes descrito fue inscrita en el Registro de la Propiedad al folio 221 del tomo 831 de Rio Piedras Sur, inscripción tercera.

6.     Despiau Batista es el propietario inscrito en el Registro de la Propiedad.

7.     El Banco Popular es tenedor por valor recibido y de buena fe del pagaré objeto de la presente acción.

8.     Despiau Batista ha dejado de pagar las mensualidades vencidas desde el 1 de mayo de 2016.

9.     Despiau Batista no ha pagado las sumas adeudadas a pesar de los requerimientos que BPPR ha efectuado a tales fines.

10.    Al 31 de enero de 2023, Despiau Batista adeuda las cantidades siguientes: $132;090.00 en concepto de principal, más intereses sobre dicha suma at 6.250% anual desde el 1 de abril de 2016 hasta su completo pago, más $2,744.43 de recargos y otros cargos acumulados, $2,570.49 balance de cuenta de reserva ("escrow"), más una suma equivalente al diez por ciento (10%) del principal original para cubrir costas, gastos y honorarios de abogados, así como cualquier otra suma pactada entre las partes.

11.    El 24 de mayo de 2017, Despiau Batista y el Banco Popular, conforme a la Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal, la Ley Núm. 184-2012, según enmendada, *supra*, fueron referidos al Centro de Mediación de Conflictos de la Región Judicial de San Juan, y posteriormente, el 31 de mayo de 2017, la mediadora Elizabeth Laguer Acevedo presentó una *Moción Informativa en Casos de Ejecución de Hipoteca* en la que le notificó al Tribunal qué "considerando las condiciones del caso, la mediadora concluyó que el mismo no es adecuado para mediación en este momento".

12. Según la mejor información y creencia de BPPR no existe gravamen posterior que afecte la propiedad objeto de ejecución en el caso de autos.

13. El Banco Popular acredita mediante declaración jurada el balance adeudado, certificando la posesión del Pagaré, que las copias del Pagaré y la Escritura de Hipoteca que se acompañan a la presente solicitud son copias fieles y exactas de los originales, y que el pagaré original está en posesión de Banco Popular y disponible para su inspección por el tribunal y por Despiau Batista de este solicitarlo.

En desacuerdo, el 25 de marzo de 2024, de forma oportuna el apelante presentó una "*Solicitud de Reconsideración.*" El 10 de junio de 2024, el foro sentenciador notificó que declaraba *No Ha Lugar* dicha petición. Aún en desacuerdo, el 10 de julio de 2024, el apelante compareció ante nos mediante una "*Apelación.*" En su recurso esbozó los siguientes señalamientos de error:

1. Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia concediendo la Ejecución de Hipoteca, aún cuando en el presente caso aplica la doctrina de *Exceptio Non Adimpleti Contractus*, o la excepción de contrato no cumplido, pues, este mismo Tribunal de Apelaciones ya resolvió que el Banco Popular pudiera ser responsable de los daños del Sr. Alexander Despiau, si éste prevalece en demostrar que (según establecido por el Tribunal de Apelaciones en el caso KLAN201900753): (1) el Banco Popular fue negligente en su función de administrador de los pagos; (2) si los informes de inspección para certificar los pagos no se hicieron correctamente; (3) si el Banco Popular tenía conocimiento desde el comienzo de que la construcción de la obra no se estaba llevando a cabo conforme los términos y condiciones del Contrato de Préstamo de Construcción, y conforme a los términos y condiciones del Contrato de Préstamo de Construcción, y conforme a las especificaciones y permisos, y por ende, no procedían los pagos por las etapas; (4) Si el banco conocía o debió conocer los defectos del terreno y el plano previo a la aprobación del préstamo y la subsiguiente construcción.

2. Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia concediendo la Ejecución de Hipoteca, pues, con ello provoca un fracaso de la justicia al privar al Sr. Despiau Batista de su propiedad sin el debido proceso de Ley, ello al no permitir que el Sr. Despiau pueda contar con una determinación final y firme en el caso de daños contra el Banco Popular, que sirva para demostrar que el banco incumplió sus obligaciones del Contrato de Préstamo de Construcción.

3. Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia concediendo la Ejecución de Hipoteca, pues, su actuación al hacerlo sin aplicar la figura de Exceptio Non Adimpleti Contractus, en violación al debido proceso de Ley, demuestra error manifiesto y podría ser una actuación parcializada hacia el demandante Banco Popular de Puerto Rico y un abuso de discreción.

El 6 de agosto de 2024, la parte apelada, presentó una "*Solicitud de Desestimación de Recurso de Apelación.*" Alegó, que el apelante no perfeccionó el recurso presentado. Sostuvo, su petición bajo el fundamentó de que el apelante no incluyó la documentación necesaria para el contenido de un escrito de apelación. Esto, en contravención de la Regla 16 (E) (1) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 16. Luego de presentar su "*Alegato en Oposición,*" el 27 de agosto de 2024, la parte apelada radicó otra "*Solicitud de Desestimación por no Haberse Perfeccionado el Recurso de Apelación.*" En síntesis, argumentó que el apelante no había notificado el escrito de apelación al foro recurrido, según lo exige la Regla 14 (B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 14.

En reacción, el 28 de agosto de 2024, el apelante presentó una "*Réplica a Moción de Desestimación.*" Indicó, que notificó al foro recurrido sobre la presentación del recurso de epígrafe el mismo día de su radicación. Acompañó su réplica con la portada del referido recurso ponchada por dicho foro.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto que nos atañe.

**II.**

**A.    Sentencia Sumaria:**

La sentencia sumaria es un mecanismo procesal cuya función es permitir a los tribunales disponer parcial o totalmente de litigios civiles en aquellas situaciones en las que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Cruz Cruz y otra v. Casa Bella Corp.* y otros, 2024 TSPR 47; *Oriental Bank v. Caballero García,* 212 DPR 671, 679 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Rodríguez Méndez, et als v. Laser Eye,* 195 DPR 769, 784 (2016); *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 225 (2015).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento que debe seguir la parte promovente de una solicitud de sentencia sumaria. A tales efectos establece que una solicitud deberá incluir (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V., R. 36.3; *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *SLG Zapata Rivera v. J. F. Montalvo*, 189 DPR 414, 432 (2013).

De otro lado, la parte que se oponga a que se dicte sentencia sumaria está obligada a contestar la solicitud de forma detallada. *Ramos Pérez v. Univisión*, 178 DPR 200, 216 (2010). Para ello, deberá cumplir con los mismos requisitos con los que tiene que cumplir el promovente, pero, además, su solicitud deberá contener: (1) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, (2) con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal. 32 LPRA Ap. V, R. 36.3 (b) (2). Es decir, el promovido no puede descansar en meras alegaciones y afirmaciones. *Birriel Colón v. Supermercado Los Colobos,* 2023 TSPR 120. Por el contrario, debe someter evidencia sustancial de los hechos materiales que están en disputa y demostrar que tiene prueba para

sustanciar sus alegaciones. *SLG Zapata Berríos v. JF Montalvo, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215. De incumplir con ello, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho. *León Torres v. Rivera, supra*, pág. 44; *SLG Zapata-Rivera v. J.F. Montalvo, supra.*

No obstante, aun en ausencia de prueba que controvierta la evidencia presentada por la parte promovente, esto no significa que procederá la moción de sentencia sumaria automáticamente, pues el tribunal no está obligado a resolver a favor del promovente. Se resolverá a favor de este si el juzgador "queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y de que, por lo tanto, una vista en los méritos resulta innecesaria". *Mun. de Añasco v. ASES et al*, 188 DPR 307, 327 (2013) (énfasis suplido). Véase, además, *Fernández Martínez v. RAD-MAN SJ, LLC*, 208 DPR 310, 337 (2021); *Jusino Figueroa v. Walgreens of San Patricio*, 155 DPR 560, 578 (2001); *Piovanetti García v. Touma*, 178 DPR 745, 774 (2010).

Si la parte quien se opone a la solicitud de sentencia sumaria utiliza declaraciones juradas como su mecanismo para admitir prueba, estas se basarán en el conocimiento personal del o la declarante, además que contendrán hechos que sean admisibles y demuestren que el o la declarante está cualificado para testificar. 32 LPRA Ap. V, R. 36.5. Por otra parte, la Regla 36.6 establece que:

Si de las declaraciones juradas de la parte que se oponga a la moción resulta que ésta no puede, por las razones allí expuestas, presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, el tribunal podrá denegar la solicitud de sentencia o posponer su consideración, concediéndole a la parte promovida un término razonable para que pueda obtener las declaraciones juradas, tomar deposiciones, conseguir que la otra parte le facilite cierta evidencia o dictar cualquier otra orden que sea justa. 32 LPRA Ap. V, R. 36.6.

En suma, se dictará sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay u otra evidencia que obre en el expediente del tribunal, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente. 32 LPRA Ap. V, R. 36.3 (e); *González Meléndez v. Municipio Autónomo de San Juan,* 212 DPR 601, 611-612 (2023). Así, el criterio rector al considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales pertinentes, según alegados por las partes en sus respectivas solicitudes u oposiciones, y que solo reste aplicar el Derecho. *Rodríguez García v. UCA, supra*, pág. 941. Esta determinación debe ser guiada por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria, para evitar la privación del derecho de todo litigante a su día en corte. *Ramos Pérez v. Univisión, supra*, pág. 216 (énfasis suplido).

Igual que el Tribunal de Primera Instancia, este Tribunal de Apelaciones se rige por la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia al determinar si procede o no una sentencia sumaria. Ello quiere decir que debemos realizar una revisión *de novo* y examinar el expediente de la manera más favorable a la parte que se opuso a la moción de sentencia sumaria en el foro primario, haciendo todas las inferencias permisibles a su favor. *Banco Popular de Puerto Rico*, v. *Zorrilla Posada y otro*, 2024 TSPR 62; *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico,* 212 DPR 335, 353 (2023)*; Meléndez González et al v. M Cuebas*, 193 DPR 100, 118 (2015).

Nos toca analizar los documentos que acompañan la moción que solicita la sentencia sumaria y los documentos incluidos con la moción en oposición, y aquéllos que obren en el expediente del Tribunal; con el fin de determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *S.L.G. v. S.L.G.*, 150 DPR 171, 193

(2000). Si de los documentos surge duda sobre la existencia de una controversia de hechos, éstas se deben resolver contra el promovente, ya que este mecanismo procesal no permite que el Tribunal dirima cuestiones de credibilidad. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020). Este foro intermedio tampoco puede adjudicar los hechos materiales y esenciales en disputa, ya que esa tarea le corresponde al foro de primera instancia. *Vera v. Dr. Bravo*, 161 DPR 307, 335 (2004). En fin, nuestra evaluación está limitada a la consideración de la evidencia que las partes presentaron ante el foro de primera instancia. Debemos revisar que los escritos cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Además, verificamos si en realidad existen hechos materiales en controversia. Finalmente, de encontrar que los hechos materiales realmente están incontrovertidos, revisamos si la primera instancia judicial aplicó correctamente el derecho a la controversia. *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119.

**B.    Hipoteca:**

Sabido es, que la hipoteca es un derecho real que garantiza una obligación dineraria y faculta al titular de derecho a poder exigir eventualmente la realización de su valor. *Crespo Rodríguez v. González González,* 208 DPR 557, 573 (2022). La hipoteca sujeta los bienes sobre los que se impone, cualquiera que sea su poseedor, al cumplimiento de la obligación cuya seguridad fue constituida. Artículo 1775 del Código Civil de 1930, 31 LPRA sec. 5043;[3] *Crespo Rodríguez v. González González,* supra, pág. 573. La hipoteca se caracteriza por ser accesoria e indivisible, de constitución registral y por gravar bienes inmuebles, ajenos y enajenables, que permanecen en la posesión de su propietario. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro,* supra.

Para que una hipoteca se constituya es compulsorio que sea inscrita en el registro de la propiedad. Artículo 1774 del Código Civil de 1930, 31

---

[3] Hacemos referencia al Código Civil de 1930, dado que, era la ley general vigente al momento de ocurrir los presentes hechos.

LPRA sec. 5042; *Banco Popular de Puerto Rico v. Zorrilla Posada,* supra; *Firstbank Puerto Rico v. Registradora,* 208 DPR 64, 92-93 (2021). A partir de su inscripción se promulga su eficacia erga omnes. *Íd.* Además, es un derecho real que subsiste mientras tenga vigencia el crédito que garantiza. *Íd.* Es decir, vive al servicio del crédito y nace y muere con el pagaré. *SLG Haedo-López v. SLG Roldán-Rodríguez,* 203 DPR 324, 342 (2019). Por su característica de realización de valor, el titular de ésta puede exigir la enajenación en pública subasta de la cosa garantizada para recobrar lo adeudado. *Bco. Popular v. Registrador,* 181 DPR 663, 673 (2011).

**C.      Contrato de Préstamo:**

El Artículo 1631 del Código Civil de 1930, 31 LPRA Sección 4511, vigente al momento en que se otorgó el préstamo en cuestión, definía el contrato de préstamo como sigue:

> Por el contrato de préstamo, una de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición devolver otro tanto de la misma especie y calidad, en cuyo caso conserva simplemente el nombre de préstamo.
>
> El comodato es esencialmente gratuito.
>
> El simple préstamo puede ser gratuito o con pacto de pagar interés.

Una vez se consuma el contrato de préstamo, nace la obligación del prestatario de devolver el dinero prestado en la especie, fecha y lugar designado en el contrato. Véase, Arts. 1124 y 1125 del Código Civil de Puerto Rico de 1930, 31 LPRA secs. 3174 y 3175. Este tipo de contrato es de naturaleza unilateral, dado que, solo produce obligaciones para una de las partes, que es el prestatario. *Torres, Torres v. Torres et al.,* 179 DPR 481, 492 (2010). Dicho prestatario recibe la cosa prestada para gastarla y se obliga a devolver otro tanto de la misma especie y calidad conforme lo pactado. *Íd*; *Llorens Becerra v. Mora Monteserin*, 178 DPR 1003, 1021 (2010).

**D.      Excepción del Contrato no Cumplido:**

Las obligaciones bilaterales tienen por causa la prestación que le ha sido prometida en cambio. *Del Toro v. Blaisni*, 96 DPR 676, 683 (1968).

Dicha mutua condicionalidad permite que de no ejecutarse por cualquier motivo esta prestación la obligación correlativa cesa de tener causa. *Íd.* De las obligaciones recíprocas surge la excepción del contrato no cumplido, para que una parte contratante pueda defenderse cuando la otra parte contratante que incurre en incumplimiento exige la satisfacción de la prestación debida. *Álvarez v. Rivera*, 165 DPR 1, 20 (2005). La referida excepción se fundamenta en la regla de la ejecución simultánea de las obligaciones recíprocas. *Íd.* De manera, que en las obligaciones bilaterales "ninguna de las partes puede demandar el cumplimiento de la obligación contraria sin cumplir u ofrecer cumplimiento de la obligación propia." *Íd.*

Ante la existencia de algún incumplimiento, el contratante perjudicado tendrá la facultad de escoger entre exigir el cumplimiento de lo debido o la resolución de la obligación, junto al resarcimiento de daños y abono de intereses en ambos casos. Artículo 1077 del Código Civil de 1930, 31 LPRA sec. 3052; *Ramírez v. Club Cala de Palmas*, 123 DPR 339, 347 (1989). La facultad de resolver el contrato se encuentra implícita en las recíprocas. *Íd.* No obstante, no todo incumplimiento de una obligación contractual recíproca conlleva efectos resolutorios. *Íd.* Para que pueda existir una resolución del contrato el incumplimiento debe ser de tal naturaleza que implique la frustración de la finalidad contractual. *Álvarez v. Rivera,* supra, pág. 19-20, citando a Díez-Picazo y Gullón, op. cit., pág. 227; Puig Brutau, op. cit., pág. 127. La referida resolución no tiene cabida ante obligaciones accesorias, cuyo incumplimiento se limita a una indemnización de daños y perjuicios. *Ramírez v. Club Cala de Palmas*, supra, pág. 348. La razón de ello estriba en que son obligaciones subordinadas a una obligación principal, por lo que su existencia es complementaria y no determinante para la celebración del contrato. *S.L.G. Méndez-Acevedo v. Nieves Rivera*, 179 DPR 359, 381 (2010).

**III.**

En su recurso, el apelante plantea que la parte apelada no cumplió con las obligaciones que asumió mediante el contrato de préstamo. En

específico, alegó que falló con sus deberes de aprobar correctamente el préstamo y de administrar eficientemente los desembolsos de dicho préstamo. Reiteró, que la controversia relacionada al incumplimiento contractual se está dilucidando en el caso KAC2015-0741. Aduce, que antes de autorizarse una ejecución de hipoteca el tribunal debe dirimir la controversia sobre el incumplimiento contractual de la parte apelada. De otra parte, argumentó que la edificación que se realizó en su propiedad es ruinosa e inhabitable. Por lo cual, se vio forzado a no continuar con los pagos mensuales del contrato en cuestión.

Por su parte, la parte apelada sostiene que el caso KAC2015-0741 es un pleito que vincula a partes adicionales y versa sobre causas de acción distintas a la presente. Agrega, que la excepción del contrato no cumplido no es de aplicabilidad al caso ante nos, dado que, el presente caso es de naturaleza unilateral. Finalmente, esgrime que el apelante aceptó todos los desembolsos que le realizó con relación a cada una de las etapas de construcción.

Tras una revisión de *novo* de la totalidad del expediente ante nos, concluimos que el presente caso no contiene hechos materiales en controversia. Por lo cual, procede la disposición sumaria del pleito. Especificamos, que es un hecho incontrovertido que las partes otorgaron un contrato de préstamo, mediante el cual el apelante compareció en calidad de prestatario y la parte apelada en calidad de prestamista. De igual modo, no existe controversia sobre que dicha obligación personal está garantizada por un gravamen hipotecario. Asimismo, no está en controversia que la referida hipoteca está debidamente inscrita a favor de la parte apelada. También es un hecho incontrovertido que el apelante incumplió desde el 1 de mayo de 2016 con los pagos que debía satisfacer con relación a la obligación por él asumida. Ante ello, no está en controversia la existencia de una deuda vencida, líquida y exigible a favor de la parte apelada. Por consiguiente, únicamente resta aplicar el derecho a los hechos ante nuestra consideración.

A la parte apelada le asiste la razón en sus argumentos. Según fue esbozado, el contrato de préstamo es una obligación unilateral. Su finalidad principal se ciñe en que el prestatario devuelva la cosa prestada. Al existir entre las partes de epígrafe un contrato de préstamo perfeccionado le corresponde al apelante cumplir con la obligación esencial de devolver con intereses el dinero prestado. De otra parte, la defensa del contrato no cumplido es una doctrina excepcional cuya existencia se encuentra dentro de las obligaciones bilaterales. El fin de dicha excepción es proteger a los contratantes que son simultáneamente acreedores y deudores.

Así pues, en este tipo de obligaciones bilaterales un contratante no puede exigir la prestación debida cuando no ha cumplido con su propia prestación. Ese no es el caso ante nos. Los hechos ante nuestra consideración no versan sobre una obligación bilateral. Por el contrario, la finalidad contractual de los presentes hechos se ciñe en que el apelante debe cumplir con su obligación unilateral de pagar el dinero que ya fue desembolsado por la parte apelada. Por consiguiente, al presente caso no le es de aplicabilidad la excepción del contrato no cumplido.

Independientemente de ello, el apelante no particularizó ni evidenció las aducidas deficiencias de la parte apelada en la administración del contrato de préstamo. Solo se limitó a levantar la excepción del contrato no cumplido, bajo el fundamento de un posible incumplimiento de la parte apelada. El "*Escrito en Oposición a Solicitud de Sentencia Sumaria*," presentado por el apelante debía detallarse y sustanciarse con relación a la causa de acción en disputa. El apelante no debió descansar en meras alegaciones o afirmaciones que están atadas a un pleito (KAC2015-0741) distinto al que nos ocupa, el cual también incluye a otras partes y relaciones contractuales.

Así pues, en el caso de epígrafe existe una evidente obligación personal sujeta a un gravamen hipotecario, la cual no ha sido cumplida por el apelante. El apelante no ha rebatido mediante prueba la legitimidad de la aludida obligación. Dicho apelante más bien se allanó al referido

incumplimiento al admitir que no ha cumplido con el contrato de préstamo. Ante ello, la parte apelada tiene derecho de exigir lo adeudado y en defecto de lograr recuperar lo debido, puede obtener su acreencia mediante la venta en publica subasta del inmueble en cuestión. Por lo cual, el foro sentenciador no incidió al declarar *Ha Lugar* la "*Solicitud para que se Dicte Sentencia Sumaria*," y en consecuencia decretar *Ha Lugar* la *Demanda"* de epígrafe.

En cuanto a la "*Solicitud de Desestimación por no Haberse Perfeccionado el Recurso de Apelación*" y la "*Solicitud de Desestimación de Recurso de Apelación*," presentadas ambas por la parte apelada, se declaran *No Ha Lugar*.

**IV.**

Por los fundamentos expuesto, *confirmamos* la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones